IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SETH E. ULMER, | : | 4:08-cv-2062 |
| | : | |
| Plaintiff, | : | Hon. John E. Jones III |
| | : | |
| v. | : | |
| | : | |
| CHESAPEAKE APPALACHIA, LLC, | : | |
| | : | |
| Defendant. | : | |

## **MEMORANDUM**

### **April 8, 2011**

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS**:

This declaratory judgment action was filed in October of 2008 by Plaintiff Seth Ulmer ("Plaintiff" or "Ulmer"). Ulmer sought to have his oil and gas lease with Defendant Cheseapeake Appalachia LLC ("Defendant" or "Chesapeake") declared void, arguing that the lease violated Pennsylvania's Guaranteed Minimum Royalty Act, 58 P.S. § 33 ("GMRA").

On January 16, 2009, we issued an Order granting the Defendant's Motion to Compel Arbitration, and stayed the instant matter pending the said arbitration. (Doc. 11). Thereafter on July 17, 2009, we issued an Order grating the parties' Motion to Stay Arbitration pending the Pennsylvania Supreme Courts' ruling in

*Kilmer v. Elexco Land Services*, No. 46 MM 2009.  (Doc. 14).  As the parties are aware, on March 24, 2010, the Pennsylvania Supreme Court issued its opinion in *Kilmer* and held that:

> Accordingly, consistent with our rules of statutory interpretation, we hold that the [GMRA] should be read to permit the calculation of royalties at the wellhead, as provided in the net-back method in the Lease and thus affirm the trial court's grant of summary judgment to the Gas Companies.

*Kilmer*, 63 MAP, 2009, 2010 Pa. LEXIS 517, *30 (Pa. March 24, 2010).

On July 15, 2010, the parties filed a status report. (Doc. 17).  At that time the Plaintiff still contended that his lease was valid under the GMRA, arguing that his lease, unlike the *Kilmer* lease, failed to limit post-production cost deductions to the lessor's pro-rata share and failed to identify what deductions will be limited to "post-production costs."  Thereafter, on March 14, 2011, the Defendant filed a supplement to the July 15, 2010 status report (Doc. 18) which prompted us to issue a Rule to Show Cause (Doc. 19) why this action should not be dismissed.  We therein noted that since the July 15, 2010 status report and the supplement thereto this action had been completely dormant and that no action has been taken to commence the arbitration.  We further observed that our potentially dispositive rulings in *Hooker v. Keeton Group, et al.,* No. 4:08-cv-2091 and the companion cases before this Court, and other similar cases before other Judges in this District,

prompted us to require the Plaintiff to show cause why the action should not be dismissed.

Plaintiff filed a Reply to Rule to Show Cause (Doc. 20) on March 25, 2011 and the Defendant filed a response thereto on April 4, 2011. (Doc. 21). We have thoroughly reviewed the parties' submissions. For the reasons that follow, we shall dismiss this action.

## **DISCUSSION**

On October 6, 2010, we issued a Memorandum and Order denying the motions to dismiss of defendant oil and gas companies in *Hooker v. Keeton Group, et al.,* No. 4:08-cv-2091 and the companion cases of *Lauchle v. Keeton Group*, No. 08-cv-1868 and *Beach v. MK Resource Partners II,* No. 08-cv-1950. We specifically found that the leases at issue in those cases, in view of the *Kilmer* decision, did not violate the GMRA, reasoning that:

> Though the essence of Plaintiffs' argument is that *Kilmer*'s holding should be narrowly applied, it is our view that *Kilmer* is properly read broadly in light of the fact that the Pennsylvania Supreme Court granted extraordinary jurisdiction to resolve the purely legal question of whether post-production costs are proper under Pennsylvania oil and gas law. The Pennsylvania Supreme Court recognized the more than seventy lawsuits, including the instant matters, pending in the Pennsylvania State and Federal Courts and the potential for stymied economic development when deciding to grant extraordinary jurisdiction to resolve this legal issue once and for all. Applying common sense to the matter, it is evident that the

Pennsylvania Supreme Court surely considered that all of the leases that would be affected by their decision were not identical, thus their holding cannot be strictly applied only to leases that are on all fours to the lease in *Kilmer*.[1] Such an application of *Kilmer*, or, rather, a non-application of *Kilmer*, defies both common sense and the concept of precedent. *See Carey v. New Penn Exploration, LLC,* 2010 U.S. Dist. LEXIS 52199 (M.D. Pa. Apr. 28, 2010)(Caputo, J.)(upholding a lease agreement that provided landowners with a one-eighth royalty after deduction of post-production expenses incurred downstream of the wellhead); *Puza v. Elexco Land Services, Inc.*, 2010 U.S. Dist. LEXIS 43346 (M.D. Pa. May 3, 2010)(Caputo, J.)(same); *Julia v. Elexco Land Services, Inc.*, 2010 U.S. Dist. LEXIS 45821 (M.D. Pa. May 11, 2010)(Caputo, J.)(same); *Kropa v. Cabot Oil & Gas Corporation*, 2010 U.S. Dist. LEXIS 56647 (M.D. Pa. Jun. 9, 2010)(Munley, J.)(same).

> [*Footnote 1*] We cannot imagine that the Pennsylvania Supreme Court, after granting expedited consideration and jurisdiction, meant to render a holding so narrow as to invite its consideration of myriad other cases involving leases that were not entirely identical to the *Kilmer* lease. We empathize with Plaintiffs' desire to escape what they consider to be bad bargains. But they have put too fine a point on *Kilmer* in aid of voiding their leases. Both the Pennsylvania Supreme Court, and this Court, recognize the need for finality. A holding contrary to the one we render today would trigger havoc in a multi-billion dollar industry. More importantly, it would be in error.

It is our considered view that the *Kilmer* Court did not make their holding so narrow as to only apply to the lease at issue in *Kilmer*. Thus, we find, despite Plaintiffs' protestations to the contrary, that it is precisely *not* the holding of *Kilmer* that post-production costs must be divided into one-eighths born by the Lessor and seven-eighths born by the Lessee for the lease to be valid. Nor do the post-production deductions provided for in the leases need to be identical

>  to the *Kilmer* deductions to be valid. The holding of *Kilmer* is that
>  the GMRA permits the calculation of the royalties at the wellhead
>  utilizing the net-back method. That is exactly what the leases here
>  provide, and as a result, we decline to void them.

*Hooker*, No. 08-cv-2091, Docket Entry 53, pp. 9-11.

Plaintiff here, like the *Hooker* plaintiffs, contends that his lease does not fall within the swath of leases upheld by *Kilmer* because his lease provides for different post-production costs that were not expressly sanctioned by *Kilmer* or our opinion in *Hooker*. Plaintiff specifically argues that the language of his lease "requires the double deduction of post-production costs in the computation of the [Ulmer's] royalty. The unavoidable result is a royalty to [Ulmer] of less than one-eighth of the wellhead value of the natural gas, in direct violation of the GMRA."[1] (Doc. 20, p. 4).

However, as we noted in *Hooker*, it is clear after *Kilmer* that the GMRA permits the calculation of the royalties at the wellhead utilizing the net-back method, and that the type of post-production costs permitted are not confined to the exact type set forth in the *Kilmer* lease. Based on our logic as set forth in *Hooker*, it should be evident that Plaintiff's position that his lease is void *ab initio*

---

[1] While we do not necessarily believe that Plaintiff's lease triggers the double deduction described by him, it is not necessary for us to resolve that question in disposing of the matter *sub judice*.

because post-production costs in his lease differ from the post-production costs in the *Hooker, Beach* and *Lauchle* lease is an untenable one.

The post-production costs provided for in Ulmer's lease are to "transport treat and process the gas and any losses in volume to point of measurement that determines the revenue realized by Lessee." (Doc. 20, p. 5, quoting Lease). As we noted in *Hooker*, and reiterate here, it is our considered view that *Kilmer* was not meant to be read narrowly, and thus we find that the deduction of post-production costs contained in the lease *sub judice* is a permissible use of the net-back method under the GMRA. Accordingly, we find that the lease *sub judice* is valid and shall dismiss this declaratory judgment action. An appropriate Order shall issue.